**Wayne ROBINSON; Curtis Battles; Wendell Miller; Martin Feldman, Plaintiffs–Appellants,**

**Barbara Orza, Plaintiff,**

**v.**

**CITY OF EDMOND, a Municipal corporation; Randell Shadid, individually and in his official capacity as Mayor of the City of Edmond; Ron Mercer, individually and in his official capacity as a member of the City Council of the City of Edmond; Kay Bickham, individually and in her official capacity as a member of the City Council of the City of Edmond; and Gary Moore, in his official capacity as a member of the City Council of the City of Edmond, Defendants– Appellees.**

**Wayne ROBINSON; Curtis Battles; Wendell Miller; Martin Feldman, and Barbara Orza, Plaintiffs–Appellants,**

**v.**

**CITY OF EDMOND, a Municipal corporation; Randell Shadid, individually and in his official capacity as Mayor of the City of Edmond; Ron Mercer, individually and in his official capacity as a member of the City Council of the City of Edmond; Kay Bickham, individually**

and in her official capacity as a member of the City Council of the City of Edmond; and Gary Moore, in his official capacity as a member of the City Council of the City of Edmond, Defendants–Appellees.

Nos. 94–6237, 95–6008.

United States Court of Appeals, Tenth Circuit.

Oct. 17, 1995.

Micheal C. Salem, Salem Law Offices, Norman, Oklahoma (Joel Carson, Carson & Mueller, Oklahoma City, Oklahoma, with him on the briefs), for Plaintiffs–Appellants.

Laura Haag McConnell, Hartzog, Conger & Cason, Oklahoma City, Oklahoma, and V. Burns Hargis, McAfee & Taft, Oklahoma City, Oklahoma (Ryan S. Wilson, Hartzog, Conger & Cason, Oklahoma City, Oklahoma, and Stephen T. Murdock, City Attorney, Edmond, Oklahoma, with them on the briefs), for Defendants–Appellees.

Michael L. Tinney, Oklahoma City, on the brief, for Amicus Curiae Citizens for Keeping the Cross.

Before ANDERSON, HOLLOWAY, and LUCERO, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiffs and appellants, Dr. Wayne Robinson, Curtis Battles, Wendell Miller and Martin Feldman, appeal from the grant of judgment in favor of defendants, City of Edmond, Oklahoma, the City's mayor, Randell Shadid, and its City Council members,

Charles Lamb, Gary Moore, Ron Mercer, and Kay Bickham, on plaintiffs' Establishment Clause challenge to the inclusion of a Latin or Christian cross on the City seal. They also appeal the imposition of attorneys fees and costs.[1] For the following reasons, we reverse and remand on both the merits of this case (Appeal No. 94–6237) and on attorneys fees and costs (Appeal No. 95–6008).

## BACKGROUND

At issue in this case is the official seal of the City of Edmond, Oklahoma. The circular seal contains four quadrants, of which one depicts a steam engine and oil derrick, one depicts the Old North Tower,[2] one depicts a covered wagon with the number 1889,[3] and the last quadrant depicts a Christian cross. A copy of the seal appears as an appendix to this opinion.

The seal was first adopted in 1965 following a competition sponsored by the City Council and a local newspaper. A local resident, Frances Bryan, designed the seal from her two winning entries. Since 1965 the seal has been used extensively by the City, and appears on City limits signs, on City flags, on the uniforms of City police officers and firefighters, on official City vehicles, on stickers identifying City property, and in the City Council chambers. Additionally, the seal appears on each utility bill sent out by the City, as well as on official City stationery and the Utility and Sanitation Department's newsletter. The seal has been registered as a trademark under Oklahoma law.

Plaintiffs are non-Christians who live or work in Edmond. Mr. Feldman is a Jew who lives in Edmond, Mr. Miller is a member of the Unitarian Congregation who lives and is self-employed in Edmond, Mr. Battles is a member of the Unitarian Congregation who

lives in Edmond, and Dr. Robinson is the minister of the Channing Unitarian Church in Edmond. They brought this action under 42 U.S.C. § 1983, claiming that the inclusion of the Christian cross in the City seal violated the Establishment Clause and the Free Exercise Clause of the First Amendment, as well as certain provisions of the Oklahoma Constitution. They named as defendants the City, its mayor, and its City Council members. The mayor and City Council members were sued in both their official and individual capacities. Plaintiffs sought declaratory and injunctive relief, as well as nominal damages.

The district court initially granted defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss plaintiffs' claims against them in their individual capacities. It subsequently granted defendants' motion for partial summary judgment on plaintiffs' claimed deprivation of their rights under the Free Exercise Clause of the First Amendment, and on their state law claim under Article I, § 5 of the Oklahoma Constitution. After a two-day trial to the court, in which eight witnesses testified, the district court granted judgment for defendants, holding that the seal did not violate the Establishment Clause under the three-part test of *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111–12, 29 L.Ed.2d 745 (1971). It also held, without explanation, that the seal was valid under the Oklahoma Constitution. Following judgment, defendants sought costs and attorneys fees, pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988. The district court awarded costs of $5,586.38, and denied all but $2,361.00 of attorneys fees, holding that plaintiffs' claims under the Establishment Clause and their claims against defendants in their individual capacities were not frivolous, unreasonable or without foundation. It held, however, that plaintiffs' claim under the Free

---

1. Appeal No. 95–6008 involves attorneys fees and costs. One additional party, Barbara Orza, is an appellant in No. 95–6008. Ms. Orza initially participated in the main case as a plaintiff, but was unavailable for trial and her claim was dismissed by the district court. She therefore did not participate in appeal No. 94–6237, involving the merits of that case. The district court did assess costs and attorneys fees against her, however, and she has therefore joined appeal No. 95–6008 challenging those fees and costs.

2. The Old North Tower is a well-known local landmark of what is now the University of Central Oklahoma. It is where the first higher education classes were conducted in the Oklahoma Territory.

3. The significance of the covered wagon and the number 1889 is that "wagons were used in the Land Run of 1889 the day Edmond was first settled." Mem.Op. at 4; Pls.' Br., Attach 01.

Exercise Clause was without foundation, given plaintiffs' admission in their depositions that "they were completely free to exercise their respective chosen religions in the City of Edmond," Order at 3, Pls.' Br., Attach. F3, and that fees and costs were appropriately awarded to defendants for defending such a baseless claim.

On appeal, plaintiffs argue the district court erred in finding for defendants on their Establishment Clause claim.[4] They also claim error in the district court's order requiring plaintiffs to disclose *in camera* to the court a letter sent to plaintiffs by their attorney. Finally, they claim the district court erred in awarding to defendants attorneys fees and costs incurred in responding to plaintiffs' Free Exercise Clause claim, which the court held was frivolous. They in turn seek an award of attorneys fees and costs if they prevail in this appeal. Defendants seek attorneys' fees incurred in defending their award of fees and costs below.

## DISCUSSION

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The Supreme Court generally applies the three-part test of *Lemon* when evaluating claimed violations of the Establishment Clause.[5] Thus, we continue to apply it to such cases, while recognizing that "[a]lthough the Supreme Court has been unwilling to endorse *Lemon* as the 'be-all' and 'end-all' in Establishment Clause cases, it has continued to apply it almost exclusively." *Friedman v. Board of County Comm'rs*, 781 F.2d 777, 780

(10th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986).

 Government action violates the Establishment Clause under *Lemon* if it fails to meet any of the following conditions: (1) it must have a secular purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion; and (3) it must not foster excessive government entanglement with religion. *Lemon*, 403 U.S. at 612–13, 91 S.Ct. at 2111–12. The first and second parts of the test have been modified, or at least recast, to ask whether the challenged government action was intended to endorse, or has the effect of endorsing, religion. *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 592–93, 109 S.Ct. 3086, 3100–01, 106 L.Ed.2d 472 (1989); *Lynch v. Donnelly*, 465 U.S. 668, 687–94, 104 S.Ct. 1355, 1366–70, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring); *Foremaster v. City of St. George*, 882 F.2d 1485, 1491 (10th Cir.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990).

 Plaintiffs concede that the main issue in this case is whether the City seal violates the second part of the *Lemon* test: whether its primary effect is to advance or inhibit religion, or, in endorsement test terms, whether it conveys or attempts to convey the message "that religion or a particular religious belief is *favored or preferred.*" *Allegheny*, 492 U.S. at 593, 109 S.Ct. at 3101 (quoting *Wallace v. Jaffree*, 472 U.S. 38, 70, 105 S.Ct. 2479, 2497, 86 L.Ed.2d 29 (1985) (O'Connor, J., concurring in the judgment)).[6] In applying this "effects" test, we must con-

---

**4.** Plaintiffs do not appeal the dismissal of their Free Exercise clause claim.

**5.** While the *Lemon* test has been criticized by many, including some members of the Supreme Court, and has been declared dead by Justice Scalia, *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, — U.S. —, —–—, 113 S.Ct. 2141, 2149–50, 124 L.Ed.2d 352 (1993), the Supreme Court has specifically declined to overrule it. *See id.* at —, 113 S.Ct. at 2148 n. 7; *see also Lee v. Weisman*, 505 U.S. 577, 586–87, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992).

**6.** Standing is of course always necessary in an Establishment Clause case, and it is sometimes a

difficult issue. No one in this case disputes plaintiffs' standing. Under our case law, plaintiffs clearly have standing. *See Foremaster*, 882 F.2d at 1490 ("Foremaster's allegations of direct, personal contact suffices as non-economic injury.").

Further, because we hold that the City seal violates the second (effects or endorsement) part of the *Lemon* test, we need not address plaintiffs' arguments that the seal also violates the first (purpose) part of the test or the third (entanglement) part of the test. Failure to satisfy any of the three *Lemon* test prongs suffices to support an Establishment Clause violation.

sider the "'particular physical setting'" of the challenged action. *Foremaster*, 882 F.2d at 1491 (quoting *Allegheny*, 492 U.S. at 597, 109 S.Ct. at 3103). Further, we evaluate the effect "by an objective standard, which looks only to the reaction of the average receiver of the government communication or average observer of the government action." *Friedman*, 781 F.2d at 781; *see also, Foremaster*, 882 F.2d at 1491 ("We inquire what an average observer would perceive when viewing the action of the City.").

■ Other cases, including two from our own circuit, have considered whether a government seal or logo containing an unmistakably religious image violates the Establishment Clause. All but one of those cases have held that it does. Finding no principled distinction between those cases and this one, we likewise hold that the Edmond City seal violates the Establishment Clause.

We first addressed this issue in *Friedman*, in which the Bernalillo County seal containing a Latin cross and the Spanish motto "CON ESTA VENCEMOS" was challenged on Establishment Clause grounds. Like the City seal here, the Bernalillo County seal had been used for many years, and used pervasively, appearing on "county documents, stationery, motor vehicles, and the shoulder patches of sheriff's department officers." *Friedman*, 781 F.2d at 779. The district court found no Establishment Clause violation, concluding that the cross was simply an historical depiction of the importance of the Catholic Church in settling the southwest. On appeal, we reversed, holding that under either a clearly erroneous or a de novo standard of review,[7] the lower court erred.

In reaching that conclusion, we considered "the seal's composition and use." *Id.* at 782. We noted that the cross was prominent, as "the only visual element on the seal that is surrounded by rays of light." *Id.* Further, the impression conveyed by the cross we described as follows:

A rabbi testified that the seal suggested to him that there was an "officialness" about Christianity in the state and county. In addition, he pointed out that the cross had at times symbolized outright oppression and persecution of Jewish people. It cannot be denied, as one amicus brief argues, that the cross probably would have a similarly threatening connotation for a Lebanese Moslem or Northern Irish Protestant. We are compelled to draw the same conclusion with regard to the reactions of Native Americans who reside in Bernalillo County. The seal certainly does not memorialize their "Christian heritage" but

---

7. We acknowledged in *Friedman* that there is some ambiguity concerning the standard for our review of "constitutional facts" like a district court's findings on each part of the *Lemon* test. We observed that conflicting language in the Supreme Court's *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), decision suggested either a clearly erroneous or a de novo standard of review could apply, while the Supreme Court's subsequent decision in *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 508, 509, 104 S.Ct. 1949, 1963–64, 1964, 80 L.Ed.2d 502 (1984), held that the clearly erroneous standard did not apply to appellate review of a finding of malice in a First Amendment case. Because we concluded in *Friedman* that the lower court's findings and conclusions were wrong under either standard, we did not decide "which standard applies under the Establishment Clause." *Friedman*, 781 F.2d at 779–80 n. 2. Because we reach that same conclusion here—that the district court erred under either standard—we too decline to decide which standard applies. We do note, however, that several other circuits appear to hold that a de novo standard applies. *See Harris v. City of Zion*, 927 F.2d 1401, 1402 n. 1 (7th Cir.1991), ("It is well-settled that whether a government display violates the first amendment is indeed a question of law. Thus, on review we examine the issues *de novo* with 'no deference to the district court's resolution.'") (quoting *Mather v. Village of Mundelein*, 864 F.2d 1291, 1292 (7th Cir.1989) (other citations omitted)), *cert. denied*, 505 U.S. 1218, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992); *New Life Baptist Church Academy v. Town of East Longmeadow*, 885 F.2d 940, 941 (1st Cir.1989) (" 'First Amendment questions of "constitutional fact" compel [the] Court's de novo review.'") (quoting *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 54, 91 S.Ct. 1811, 1825, 29 L.Ed.2d 296 (1971) (plurality opinion) (citations omitted)), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 784 (1990); *Northwest Indian Cemetery Protective Ass'n v. Peterson*, 795 F.2d 688, 691 n. 3 (9th Cir.1986) ("We review de novo the question whether the Indian plaintiffs have a valid first amendment claim."), *rev'd on other grounds*, 485 U.S. 439, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988); *Bender v. Williamsport Area Sch. Dist.*, 741 F.2d 538, 542 n. 3 (3d Cir.1984), *vacated for lack of standing*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).

rather that of those who sought to extinguish their culture and religion.

*Id.* at 781–82.

In addition to the particular message conveyed by the actual elements of the seal, we also considered its pervasiveness: "the seal ... pervades the daily lives of county residents. It is not displayed once a year for a brief period ... [but r]ather it appears on all county paper work, on all county vehicles, even on county sheriff's uniforms." *Id.* at 782. We therefore concluded that the seal violated the Establishment Clause.[8]

We faced a similar challenge to a city seal in *Foremaster,* in which the challenged seal contained a depiction of the St. George, Utah, temple of the Church of Jesus Christ of Latter–Day Saints ("LDS Church"). The district court granted summary judgment to the city, finding that the illustration of the St. George temple did not have the primary effect of endorsing the LDS Church. We reversed and remanded, finding that there was "a genuine issue of material fact as to what an average observer would perceive when viewing the City logo." *Foremaster,* 882 F.2d at 1491.[9]

In addition to *Friedman* and *Foremaster,* several other cases from other circuits address Establishment Clause challenges to city seals or logos. In *Harris v. City of Zion,* 927 F.2d 1401 (7th Cir.1991), *cert. denied,* 505 U.S. 1218, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992), and *Kuhn v. City of Rolling Meadows,* 927 F.2d 1401 (7th Cir. 1991), *cert. denied,* 505 U.S. 1218, 112 S.Ct. 3025, 120 L.Ed.2d 897 (1992), consolidated for decision, the Seventh Circuit held that seal of the city of Rolling Meadows and the seal, emblem and logo of the city of Zion both violated the Establishment Clause. The

Rolling Meadows seal contained, in one of its four quadrants, a depiction of a church that was under construction with a Latin cross in front of it. The Zion seal contained a shield on which appeared a Latin cross, a dove carrying a branch, a crown and sword, and the name "Zion." A ribbon above the shield contained the words "God Reigns." Both city seals were used extensively, on city vehicles, the city letterhead, the shoulder patches of city police officers and, in Zion, on firefighters as well, and in the City Council chambers.

Addressing first the Rolling Meadows seal, the court observed that it "is a permanent statement that is viewed year-round." *Kuhn,* 927 F.2d at 1412. Further, the seal "acts as the City's imprimatur for official correspondence, property and business." *Id.* The court rejected the city's argument that the presence of other, secular images on the seal "neutralized" any religious message conveyed by the seal. "The images on the seal are not just neutral snapshots of the community; they are charged with endorsement.... To any observer, the Rolling Meadows seal expresses the City's approval of those four pictures of City life—its flora, its schools, its industry and commercial life, and its Christianity." *Id.* The court therefore concluded that the city seal "endorses Christianity in violation of the first amendment." *Id.* at 1413.

Turning to the Zion seal, the court found that it violated both the purpose and the effects test of *Lemon.* Finding that its indisputably religious purpose when it was originally adopted in 1902 was not diminished by a more recent decision to retain the seal for historical purposes, the court went on to conclude that the seal constituted an unconstitutional endorsement of Christianity. It

---

**8.** *Friedman* was cited with apparent approval by Justice O'Connor in her concurring opinion in *Allegheny,* 492 U.S. at 629, 109 S.Ct. at 3120, as well as by Justice Kennedy in his opinion concurring in the judgment in part and dissenting in part. *Id.* at 661, 109 S.Ct. at 3137.

**9.** Defendants argue strenuously that our remand in *Foremaster* for further factual findings on what the average observer would perceive when viewing the logo clearly indicates that such an inquiry is always purely factual, and the district court's findings on that matter are only reversible if

clearly erroneous. Thus, so the argument goes, we could not easily reverse the district court's findings about the average observer in this case. We are not convinced *Foremaster*'s holding reveals so much. The question of what the average observer would perceive when looking at a LDS Church temple, a less familiar religious symbol, would probably require more inquiry than the question of what the average observer would perceive when looking at a Latin cross, a very familiar religious symbol.

also rejected Zion's argument that the seal, emblem and logo "merely commemorate the historical origins of the City." *Harris*, 927 F.2d at 1414, stating that "the City may not honor its history by retaining the blatantly sectarian seal, emblem, and logo." *Id.* at 1415. Finally, the court rejected the city's attempts to distinguish its seal from the one our court had already held unconstitutional in *Friedman*:

> The City of Zion seeks to distinguish its corporate seal from the seal of Bernalillo County by noting that the Latin cross in the Zion seal is smaller and shares space on the seal with a crown, a scepter and a dove. We find this argument a baseless attempt at distinction.

*Id.; but see Murray v. City of Austin*, 947 F.2d 147, 149 (5th Cir.1991) (upholding against Establishment Clause challenge a city insignia based upon "the family coat of arms of Stephen F. Austin, the 'father of Texas' and the person after whom the City is named," and which included a Latin cross), *cert. denied*, 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992).[10]

Because we find no meaningful distinction between the Edmond seal and that of Bernalillo County or the cities of Zion and Rolling Meadows, we hold that Edmond's seal violates the Establishment Clause. Like Bernalillo County's seal, and the seals of Zion and Rolling Meadows, the cross is a prominent feature of the Edmond seal.[11] The religious significance and meaning of the Latin or Christian cross are unmistakable. Further, Edmond's use of the seal is as pervasive as the county seal in *Friedman*, and the city seals in *Harris* and *Kuhn*.

Defendants argue that the City seal is permissible because it symbolizes "the unique history and heritage of Edmond." Appellees' Br. at 6. We agree with the Seventh Circuit's rejection of the identical historical argument in *Harris*: "the City may not honor its history by retaining the blatantly sectarian seal.... These symbols transcend mere commemoration, and effectively endorse or promote the Christian faith." *Harris*, 927 F.2d at 1415. Such an appeal to history also failed to save the Bernalillo County seal in *Friedman*, and is indeed an argument which could always "trump" the Establishment Clause, because of the undeniable significance of religion and religious symbols in the history of many of our communities. We rejected arguments in *Friedman* that the county seal was permissible because it was not intended to advance religion, stating "[i]f the challenged practice is likely to be interpreted as advancing religion, it has an impermissible effect and violates the Constitution, regardless of whether it actually is intended to do so." *Friedman*, 781 F.2d at 781.

Defendants further argue that the evidence in this case supports their claim that the "majority of the people in Edmond—the average, everyday Christian and non-Christian citizens" do not view the seal as endorsing religion. That is not determinative. As we observed in *Friedman*.

> It is not decisive that defendants' heraldic and historical experts, and lay witnesses who are members of Christian sects, reacted less emotionally to the seal. It is to be expected that ·members of Christian sects would be more comfortable with a seal endorsing their beliefs than would in-

---

10. The Austin insignia appeared extensively throughout the city. The Fifth Circuit rejected the argument that "any time a municipality incorporates a religious symbol within its seal, insignia, or logo—regardless of the history, purpose, or context—the Establishment Clause is violated." *Murray*, 947 F.2d at 156. Instead, the court distinguished *Friedman* by the *Friedman* seal's

> lack of undisputed secular symbols within the seal; the accompanying phrase which translates "With This We Conquer"; the county's relatively recent expanded use of the seal; and that at least one county commissioner knew at the time that the cross represented the role of

> the Catholic Church in the settlement of the Southwest.

*Id.* at 157. Concluding that the Austin city seal "in its context, ... does not endorse religion in any true or meaningful sense of the word 'endorsement,' " the Fifth Circuit upheld its constitutionality. *Id.* at 158.

11. We noted in *Friedman* that the visibility of the cross was significant: "a one-color depiction in which the seal and especially the cross are not easily discernible might not pass the threshold [of impermissible joint church-state authority.]" *Friedman*, 781 F.2d at 781.

dividuals who adhere to different beliefs. The comfort of the majority is not the main concern of the Bill of Rights.

*Id.* at 782. The relevant inquiry is the objective one of what the "average observer" would perceive when viewing the seal. *Foremaster*, 882 F.2d at 1491. On that issue, we must conclude that the average observer would perceive the same sort of endorsement of Christianity which we held such an observer would feel in *Friedman*, and the Seventh Circuit held such an observer would feel in *Harris* and *Kuhn*, when evaluating governmental seals with similarly distinctive crosses.

Finally, defendants attempt to distinguish the Edmond seal from the Bernalillo County seal at issue in *Friedman* by arguing that the other secular elements of the seal effectively neutralize any religious message conveyed by the cross. While we acknowledge that each case must turn on its own facts, and that the particular context and setting of a particular governmental seal or logo is relevant to its fate when challenged under the Establishment Clause, we decline defendants' invitation to carefully and minutely distinguish the Edmond seal from the Bernalillo County seal based upon the particular dimensions of the crosses in the two seals or the secular or non-secular nature of other elements of the seal. As the Seventh Circuit stated in rejecting the identical argument in *Kuhn*,

> The images on the seal are not just neutral snapshots of the community; they are charged with endorsement.... [R]egard-

less of its origins, the [city] seal does promote the selected images it depicts. To any observer, the [city] seal expresses the City's approval of those four pictures of City life—its flora, its schools, its industry and commercial life, and its Christianity.

*Kuhn*, 927 F.2d at 1412. We too decline to hold that some visible and clearly defined religious images are permissible while other identically visible religious images are not. "Otherwise, we judges will be immersed in the minutiae of graphic design, our rulers and calipers in hand, scrutinizing each symbol for acceptable proportion, color and gloss. With no principled basis for distinguishing one seal from the next, our opinions will be fastidiously fact-bound and our precedent hopelessly abstract." *Murray*, 947 F.2d at 170 (Goldberg, J., dissenting).

In sum, we hold that under applicable Tenth Circuit and Supreme Court authority, the Edmond City seal violates the Establishment Clause. The district court erred in concluding otherwise. We therefore reverse and remand for further proceedings consistent with this opinion.[12]

Because we reverse and remand this case, and find in favor of plaintiffs, plaintiffs are now the prevailing parties for purposes of the attorneys fees provisions of 42 U.S.C. § 1988. This casts in a new light the determination of any fee awards in this case. We accordingly remand the issue of attorneys fees and costs to the district court for a redetermination in light of this opinion.

---

12. Plaintiffs have additionally argued that the district court erred in requiring *in camera* production of a letter from plaintiffs' counsel to plaintiffs, in violation of the attorney/client privilege. As defendants point out, plaintiffs identify no prejudice or damage stemming from this claimed error, and they fail to address the issue at all in their reply brief. We accordingly decline to address the issue.