### B. Jean WEBB, Plaintiff,

### v.

### CITY OF REPUBLIC, MISSOURI, Defendant.

No. 98–3306–CV–S–RGC–ECF.

United States District Court,
W.D. Missouri,
Southern Division.

July 9, 1999.

Stephen D. Bonney, Kansas City, MO, for plaintiff.

James M. Kelly, Republic, MO, David R. Huggins, Memphis, TN, for defendant.

## ORDER AND INJUNCTION

RUSSELL G. CLARK, Senior District Judge.

On July 1, 1998, plaintiff B. Jean Webb ("Webb") filed a complaint against the city of Republic, Missouri ("Republic"), alleging that Republic's use of a religious symbol in its city seal violated her rights under the Establishment Clause of the First Amendment, as well as certain provisions of the Missouri State Constitution. Webb brings this action pursuant to 42 U.S.C. § 1983 and seeks declaratory and injunctive relief from Republic's supposed endorsement of religion. On May 3, 1999, Webb filed a Motion for Summary Judgment. Both parties have filed briefs and Webb's motion is, therefore, ripe for review. For the reasons stated below, the Court will grant Plaintiff's Motion for Summary Judgment and issue an injunction prohibiting the city of Republic from displaying a religious symbol on its city seal.

## I. FACTUAL BACKGROUND

The facts are brief and uncontested. In late 1990, Republic held a public competition to select a logo for the city flag and seal. Suggestions in Support of Plaintiff's Motion for Summary Judgment Exhibit 1 [hereinafter "Plaintiff's Support"]. At the Board of Alderpersons Meeting on October 22, 1990, the Board unanimously approved an award of $100 to the winning designer in each category. *Id.* On January 28, 1991, Alderperson Tindell announced that the logo selected for both the flag and seal were submitted by Marilyn M. Schexsnayder. *Id.* On February 11, 1991, Alderperson Tindell presented Ms. Schexsnayder with a check for $100.

The chosen design to represent the city—and hereinafter referred to as either the "logo" or the "seal"—has an elliptical shape and is divided into four quadrants, each containing a picture. Clockwise from the upper left, the quadrants contain: (1) an outline of the State of Missouri with a star in the southwest corner noting the location of Republic; (2) an outstretched hand; (3) a silhouette of what presumably represents a traditional family—an adult man and a woman standing next to each other with two children (one male, one female) standing in front of them; (3) and a symbol of a fish.

Since 1991, Republic has displayed the seal on city buildings, city facilities, flags, signs, vehicles, stationery, letterhead, envelopes, mailing labels, business cards, and real estate tax receipts. Plaintiff's Support Exhibit 2; Plaintiff's Support Exhibit 7, Deposition of Doug Boatright at 14–16, 19–20, 22–23 [hereinafter "Boatright Depo."]. Republic uses tax revenues to pay for flags, stationery, business cards, and decals bearing the city seal. Boatright Depo. at 11–12, 16, 24.

It is the portrayal of the fish on Republic's city seal that brings this matter before the Court. Historically, the symbolic representation of a fish has been used as a Christian symbol. Declaration of Dr. Paul Mirecki Exhibit 1. The fish symbol has

become particularly prevalent in contemporary American culture. *Id.* However, the First Amendment of the United States Constitution mandates a separation between church and state. Webb objects, therefore, to the inclusion of what is arguably a religious symbol on the city seal of Republic.

From October 1995 until December 1998, Ms. Webb, the plaintiff in this case, was a resident and taxpayer of Republic. Plaintiff's Support Exhibit 8, Deposition of B. Jean Webb at 4, 6 [hereinafter "Webb Depo."]. Webb has seen the city seal displayed "[h]undreds of times" on "city limits sign[s] . . . signs indicating city property, city vehicles, [and] stationery." Webb Depo. at 9–10. Webb is a member of a non-Christian religion. Second Amended Complaint, ¶ 13. As a result of the alleged governmental endorsement of Christianity, Webb feared that her non-Christian religious practices would not be tolerated in the community and that she and her children would be harassed and ostracized. *Id.* Consequently, Webb concealed her true religious beliefs and told her children not to discuss their religion with others. *Id.* After authoring an editorial in the city newspaper opposing the city seal, Webb received hate mail and harassing phone calls from citizens of Republic. *Id.* Webb's children were ostracized as a result of her criticism of the city seal. *Id.* Eventually, Webb even moved from the community rather than endure the harassment. *Id.*

## II. SUMMARY JUDGMENT STANDARD

There are well settled principles in ruling on a motion for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact present in the case and judgment should be awarded to the party seeking the motion as a matter of law. *Langley v. Allstate Insurance Co.,* 995 F.2d 841, 844 (8th Cir. 1993). Because the summary judgment remedy is drastic, it should not be granted unless the moving party has established the right to a judgment with such clarity that there is no room for controversy. *Umpleby v. United States,* 806 F.2d 812, 814 (8th Cir.1986). However, as the Supreme Court noted in *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole . . . ."

In order for a motion for summary judgment to be defeated, the nonmoving party must resist the motion by making a sufficient showing on every element of its case on which it bears the burden of proof, *Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir.1992), and the factual dispute "must be outcome determinative under prevailing law." *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992). The Supreme Court has held that summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. However, such a motion is to be viewed in the light most favorable to the opposing party, who also must receive the benefit of all reasonable inferences to be drawn from the underlying facts. *Johnson v. Minnesota Historical Society,* 931 F.2d 1239, 1244 (8th Cir. 1991).

The standard for granting a motion for summary judgment is similar to that of a directed verdict: the evidence must be such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Westchem Agricultural Chemicals, Inc. v. Ford Motor Co.,* 990 F.2d 426 (8th Cir.1993). Whether a "genuine issue

of material fact" exists depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law". *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

## III. LEGAL STANDARD

The First Amendment mandates that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The prohibitions embodied in the First Amendment have long been applied to state and local governments through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); *Douglas v. City of Jeannette,* 319 U.S. 157, 161, 63 S.Ct. 877, 880, 87 L.Ed. 1324 (1943).

In assessing the constitutionality of governmental seals that incorporate religious icons, courts apply the analytical framework set out in *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). *See Friedman v. Board of County Commissioners,* 781 F.2d 777, 780 (10th Cir.1985) (en banc), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986); *Harris v. City of Zion,* 927 F.2d 1401, 1411 (7th Cir.1991), *cert. denied,* 505 U.S. 1229, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992). In *Lemon,* the Supreme Court articulated the three tests applicable to Establishment Clause issues: "First, the statute [or government practice or custom] must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111 (citations omitted). "The challenged practice or statute ... must pass each of these tests to be found constitutional." *Harris,* 927 F.2d at 1411.

Subsequent decisions clarified the definition of a governmental action that unconstitutionally "advances" religion. The Supreme Court has paid particularly close attention to whether the challenged practice either has the purpose or effect of "endorsing" religion. *County of Allegheny v. A.C.L.U.,* 492 U.S. 573, 592, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472 (1989). "Of course, the word 'endorsement' is not self-defining. Rather, it derives its meaning from other words that this Court has found useful over the years in interpreting the Establishment Clause." *County of Allegheny,* 492 U.S. at 594, 109 S.Ct. at 3101. The prohibition against governmental endorsement of religion "preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred." *Id.* Government "may not ... promote one religion or religious theory against another or even against the militant opposite." *Id.* (quoting *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968)).

When judging the effect of a particular religious symbol, a court must weigh its impact on a reasonable observer and assess whether the government display "sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Lynch v. Donnelly,* 465 U.S. 668, 688, 104 S.Ct. 1355, 1367, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring in judgment). "We inquire what an average observer would perceive when viewing the action of the City." *Foremaster v. City of St. George,* 882 F.2d 1485, 1491 (10th Cir. 1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990).

## IV. LEGAL REASONING

It is not contested that the city of Republic sponsored a contest to choose a design for its official city logo. Nor is it contested that the winning design—which

includes the fish symbol—is displayed extensively throughout the city on a continuous basis, both before and after this lawsuit. For purposes of summary judgment, the only fact allegedly at issue is whether the fish is a religious symbol or not, and if it is, whether the display of the fish on the city seal violates the separation of church and state commanded by the Constitution of the United States.

■ Republic argues that it is impossible for the Court to assess the "reasonableness" of observations concerning the city logo and that, therefore, the issue should be submitted to a jury. As support for its proposition that a dispute exists as to the religious nature of the fish symbol, Republic offers a declaration from Dott. Ubaldo Stecconi, who has a "laurea degree in translation" from the University of Trieste, Italy. Suggestions in Opposition to Plaintiff's Motion for Summary Judgment Exhibit B, Curriculum Vitae of Ubaldo Stecconi, at 2 [hereinafter "Stecconi Curriculum Vitae"]. Mr. Stecconi is now employed in an adjunct faculty position at American University in Washington, D.C., where he teaches Italian. Stecconi Curriculum Vitae at 2–3. He has lived in the United States only since January of 1999. *Id.*

Mr. Stecconi prepared a report entitled, "Interpreting the Fish Sign" that is attached to his declaration. The report asserts that Webb's interpretation of the fish symbol overlooks the context in which it was placed within the seal. Mr. Stecconi contends that proper interpretation of the fish symbol must consider the intent of the author as well as the intent of the sign. He maintains that Webb's reaction to the sign is "irresponsible semiotic behavior, because it flouts the very foundations of semiotics, which ensure controlled thinking, civil discourse, and ultimately harmonious coexistence in the community." Suggestions in Opposition to Plaintiff's Motion for Summary Judgment Exhibit B, Interpreting the Fish Sign, at 6–7.

Expert testimony may be admitted if it "will assist the trier of fact to understand the evidence or to determine a fact in issue" and if the witness is "qualified as an expert by knowledge, sill, experience, training, or education." Fed.R.Evid. 702. The proffered testimony from Mr. Stecconi fails on both counts. At its best, Mr. Stecconi's report is an academic exercise in the application of a general theory of how symbols should be viewed. At issue in the present case, however, is the effect of the fish symbol on the average observer. This is an objective standard, not a subjective one. The intentions of Republic in creating the seal—while perhaps benign—is extraneous to the question before the Court. Mr. Stecconi's report, therefore, is not relevant.

Secondly, Mr. Stecconi is not an expert in Christian history or American culture. His training is predominantly that of a translator and semiotician. A perusal of his curriculum vitae reveals that Mr. Stecconi has been employed almost exclusively as an Italian language instructor and as a translator. The only reference to anything remotely connected to religion is a future appointment as a fellow of the American Bible Society's Research Center for Scripture and the Media. Stecconi's Curriculum Vitae at 3. The Court rejects Mr. Stecconi's report because it is inadmissible under Rule 402 and Rule 702 of the Federal Rules of Evidence.

■ As touched on in the discussion above, even if the Court considered Mr. Stecconi's report, it would not help in the determination of the proper inquiry: how the average reasonable observer interprets the symbolic fish on the city seal of Republic. Webb brings overwhelming evidence before the Court to show that only one conclusion is possible: when viewing the fish on Republic's flag, a reasonable observer would conclude that it is a Christian religious symbol.

First, even Republic's own citizens do not deny that the fish on the city seal is a Christian symbol. At a meeting of the

Board of Aldermen on March 9, 1998, two residents said they moved family and businesses to Republic because of the inclusion of the fish on the city seal: (1) Sam Danner stated that he moved to Republic because he was a Christian and the symbol persuaded him that he would be accepted; and (2) Don LaRue stated that the emblem brought him to Republic because he was a Christian. Plaintiff's Support Exhibit 4. Even more persuasive on the issue of whether the fish is a Christian symbol is the statement at that same meeting of Dan Weaver, the Pastor of the West Republic Baptist Church:

> There was some question in there about what the Ichthus [the fish symbol] actually stood for, and they're [the A.C.L.U.] stating that it does stand for Jesus Christ, and they are correct on that. They are correct on that. *It doesn't just stand for any religion. It is based on Jesus Christ,* and that's the principle this country was founded upon.... I say the line is drawn. Stay out of Republic. We're going to stand for Christian principles.

*Id.* (emphasis added).

Evidence from other nearby communities also bolster Webb's assertions that the fish symbol is a Christian symbol. Letters of support sent to Republic when this controversy first erupted identify the fish symbol as a Christian religious symbol. A petition from the Liberty Faith Church in Norwood, Missouri, states: "We, the Undersigned, want you to know that we support you in your use of the *Christian fish symbol* in your town's logo, and in your defense of it against attacks from the A.C.L.U." Declaration of Marley Anderson Exhibit 2 (emphasis added). Another petition, identical in form to others signed by over 150 southwest Missouri residents, states, "We here the undersigned do declare that the *christian symbol* [sic] on the city of Republic's flag should be allowed to remain on the flag." Declaration of Marley Anderson Exhibit 3 (emphasis added).

Additionally, the symbol of a fish is exhibited extensively throughout southwest Missouri to denote Christian-owned businesses. Christian Publisher's Outlet in Springfield integrates the fish symbol within its logo. Declaration of Gay J. Revi Exhibit 2. The Lighthouse Lanes, a bowling alley in Springfield, incorporates fish symbols on its outdoor sign and exclaims, "Jesus is Lord!" *Id.* A local Christian radio station, KWFC, distributes bumper stickers that display the fish symbol with the station's call letters inside and the words, "Your Constant Christian Companion" below. Many cars in Republic and throughout southwest Missouri carry not only the KWFC bumper sticker, but also auto emblems in the shape of a fish. Those produced by Harbor House Gifts contain the following description in its packaging:

> The earliest followers of Jesus were persecuted and forced to worship in hidden locations. Often these believers would scratch the secret symbol of a fish in the ground to help them identify other Christians.

> .    .    .    .    .

> The fish symbol transcends differences in cultures and denominations. *Throughout generations the fish symbol continues to identify the true followers of Jesus Christ.*

Declaration of Gay J. Revi (emphasis added).

Based on all of the above and especially the statements by the citizens of Republic itself, the Court finds that no genuine issue of material fact remains in dispute on whether the fish symbol on Republic's city seal is a religious symbol. No reasonable person could conclude otherwise and it would be disingenuous of the Court to create a controversy where none exists. The next question before the Court is whether the display of this particular religious symbol violates the provisions of the United States Constitution.

Almost all other courts examining the inclusion of a religious symbol within a city

seal have found them in contravention of the principles of separation of church and state. The most recent pronouncement from a court of appeals has come from the Tenth Circuit. In *Robinson v. City of Edmond*, the circuit panel reversed the Oklahoma district court and held that the city seal of Edmond violated the Establishment Clause of the First Amendment. *Robinson v. City of Edmond*, 68 F.3d 1226 (10th Cir.1995), *cert. denied*, 517 U.S. 1201, 116 S.Ct. 1702, 134 L.Ed.2d 801 (1996). Similar in style to the seal of Republic, the Edmond seal also contained four quadrants. *Id.* at 1228. However, instead of the fish symbol, the city of Edmond placed a cross in one of the quadrants of the seal.

The *Robinson* court relied on the reasoning in an earlier Tenth Circuit decision to find that inclusion of the cross was unconstitutional. In *Friedman v. Board of County Commissioners*, 781 F.2d 777 (10th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986), that court considered "the seal's composition and use." *Id.* at 782. The *Robinson* court found that the "particular message conveyed by the actual elements of the seal" was unmistakably religious. *Robinson*, 68 F.3d at 1232. Further, the court found significance in the fact that Edmond's use of the seal was pervasive, rather than a once-a-year display, such as a cross placed in a Christmas exhibit. *Id.*

The Seventh Circuit has also decreed that a cross on a city logo breaches the separation between church and state. *Harris v. City of Zion*, 927 F.2d 1401 (7th Cir.1991), *cert. denied*, 505 U.S. 1229, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992). Like the Tenth Circuit in *Robinson*, the Seventh Circuit rejected an argument in *Harris* that a religious symbol within a city seal is permissible if it symbolizes a "religious heritage." *Harris*, 927 F.2d at 1415. The Seventh Circuit found that the exhibition of a cross on Zion's city seal was unconstitutional: "the City may not honor its history by retaining the blatantly sectarian seal, emblem, and logo. These symbols transcend mere commemoration, and effectively endorse or promote the Christian faith." *Id.*

In the only circuit decision to allow a cross to remain on a city seal, the historical argument spurned by the Tenth and Seventh Circuits was, however, persuasive. The Fifth Circuit rebuffed an Establishment Clause challenge in *Murray v. City of Austin, Texas* because the city insignia was based upon "the family coat of arms of Stephen F. Austin, the 'father of Texas' and the person after whom the City is named." *Murray v. City of Austin, Texas*, 947 F.2d 147, 149 (5th Cir.1991), *cert. denied*, 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992). Stephen F. Austin's family crest contained a Latin cross and the city of Austin adapted his coat of arms for use as a city logo. In concluding that the seal did not have the principal or primary effect of advancing religion, the *Murray* court reasoned that "the insignia has the principal or primary effect of identifying city activity and property and promoting Austin's unique role and history." *Id.* at 155.

■ The facts supporting the Fifth Circuit's decision in *Murray* differ, however, from those in the case at bar. The connection between the state of Texas, the city of Austin, and Stephen F. Austin is unparalleled. Without that historical distinctiveness, the case law is well settled on the issue of whether a religious symbol on a city seal passes constitutional muster. While the citizens of Republic may have intended that its seal send only a message of moral values or promote "a universal symbol of religion," an applaudable motive cannot save the city seal from a violation of the Establishment Clause. While the purpose of placing the fish symbol on the city seal may not have been to endorse Christianity, the effect of the seal is to do so.

The portrayal of the fish impermissibly excludes other religious beliefs or nonbeliefs and—intended or not—depicts Christianity as the religion recognized and endorsed by the residents of Republic. The

Republic city seal pervasively invades the daily lives of non-Christians and sends a message that they are outsiders. The Constitution forbids such a result. The Supreme court has "unambiguously concluded that ... the First Amendment embraces the right to select any religious faith or none at all." *Wallace v. Jaffree,* 472 U.S. 38, 54, 105 S.Ct. 2479, 2487–88, 86 L.Ed.2d 29 (1985).

Accordingly, it is

ORDERED that the Plaintiff's Motion for Summary Judgment is granted; and it is further

ORDERED that the Clerk shall enter judgment for the plaintiff, B. Jean Webb and against the defendant, City of Republic, Missouri; and it is further

ORDERED that the City of Republic is permanently enjoined from displaying the symbol of a fish on its seal because the inclusion of the fish symbol violates the First Amendment of the United States Constitution.