Dear Honorable Larry E. Haines
You have asked for our opinion on two issues related to the deletion of a biblical reference from a commercial business coupon that was included in a package distributed by the Carroll County Public Library as part of its summer reading program. Specifically, you have asked:
(1) Was the removal of the biblical reference required by the Establishment Clause of the United States Constitution?
(2) Did removal of the biblical reference violate the right of free speech under the First Amendment of the United States Constitution or Article 40 of the Maryland Declaration of Rights?
In our opinion, inclusion of the coupon with the biblical reference intact would not have violated the Establishment Clause. Because the circumstances of the deletion of the biblical reference are a matter of dispute, we address your second question as if the library had simply excluded the coupon with the biblical reference from the packet. In our view, exclusion of the coupon would not have violated constitutional guarantees of free speech.
 I Background
Your questions concern the contents of the "goodie bag" that was given to children who signed up for the Carroll County Public Library's summer reading program. The packets, which varied according to age group, contained materials relating to the reading program itself, a small magazine for older children, and three or four coupons offering discounts at various businesses. For example, packets included coupons for a local fast food restaurant, an amusement park, and the Baltimore Zoo.
One of the coupons distributed in the packets was for Shea's Maze, a maze created in a corn field in Gettysburg, Pennsylvania. The coupon offers $1 off the price of admission and contains the name, address, and phone number of the business and directions to the maze. The coupon states that Shea's Maze is "the only maze in corn to stand year round." Approximately half of the coupon is taken up by a cartoon figure of a mouse named "Kernel Mazeincorn Shea," which serves as the trademark of the maze. The mouse has a fish symbol on his hat and a cross on a badge or button on his coat.[1] The mouse holds a sword in his right hand. Over the mouse's left hand, in very small type, is "Eph. 6:17" — a reference to a New Testament verse.[2] The reverse side of the coupon lists the hours of operation of the maze and admission prices.
When the Shea's Maze coupon was originally submitted for inclusion in the packet, the head of the library program informed the business owner that the biblical reference would have to be removed, but did not request deletion of the fish symbol or the cross. Library staff indicate that the owner agreed to make this change, but subsequently delivered the coupons with the reference intact. Library staff then deleted the reference by hand from the coupons before including them in the packet for distribution. According to published reports, the owner of the business has stated that the biblical reference is part of the business trademark and that she never agreed to deletion of the biblical reference.[3]
 II Analysis
A. Establishment Clause
The First Amendment to the United States Constitution provides in part that "Congress shall make no law respecting an establishment of religion." This provision, commonly known as the Establishment Clause, also applies to the states by virtue of the Fourteenth Amendment. Everson v. Board of Education, 330 U.S. 1 (1947).
The Establishment Clause means, at the least, that "[n]either a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another." Everson, 330 U.S. at 15-16. The Clause also prevents the government from "appearing to take a position on questions of religious belief or from `making adherence to a religion relevant in any way to a person's standing in the political community.'" County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 594 (1989).
The Supreme Court has long applied a three-part analysis to test government practices against the Establishment Clause: the practice must have a secular purpose; it must neither advance nor inhibit religion; and it must not foster excessive entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602 (1971). In recent years, analysis of Establishment Clause issues has focused on whether the challenged action has the purpose or effect of endorsing religion. County of Allegheny,492 U.S. at 592-94.[4] Under this test, the question of whether including a coupon with a biblical reference in the summer reading package would have violated the Establishment Clause depends on whether a "reasonable observer" would perceive it as a state endorsement of religion. Santa Fe Independent School District v. Doe, 530 U.S. 290, 306-8 (2000).
The Supreme Court most recently applied the endorsement test in Good News Club v. Milford Central School, 121 S.Ct. 2093 (2001) and Santa Fe Independent School District, supra. In Good News Club, the court held that the Establishment Clause did not require a public school to exclude a religious children's club from after-hours use of school facilities. In concluding that such use would not constitute an endorsement of religion, the Court reasoned that providing religious groups with the same access to school facilities as other groups would not offend the neutrality principle underlying the First Amendment, that parents would not feel coerced to have their children join the club, and that it was unlikely that children would misperceive use of the facilities as endorsement of religion. 121 S.Ct. at 2103-7.
The Sante Fe case concerned whether prayers delivered by students at varsity football games violated the Establishment Clause. While recognizing that private speech that takes place in a government forum is not the government's speech, the Court concluded that the pre-game student invocation was not private speech because it was delivered over the school's public address system, the system was not generally open to private speakers, and the school retained some control over the content of the speech. 530 U.S. at 306-8. Moreover, the history of the practice demonstrated that it was simply a continuation of the school's previous policy of sanctioning student-led prayer at athletic events. Id. at 309-10. In those circumstances, a "student will unquestionably perceive the inevitable pregame prayer as stamped with her school's seal of approval." Id. at 308.
Whether a reasonable observer would perceive endorsement of religion in a government action depends on the context, as well as the content, of the government action. In County of Allegheny v. American Civil Liberties Union, 492 U.S. 573 (1989), the Court held that display of a creche in a central portion of a county building violated the Establishment Clause. But in Lynch v. Donnelly, 465 U.S. 668 (1984), the Court found that including a nativity scene in a city's Christmas display did not violate the Establishment Clause, where the nativity scene was included with a Santa Claus house, reindeer pulling Santa's sleigh, candy striped poles, a Christmas tree, carolers, cutout figures of characters such as a clown, an elephant, and a teddy bear, hundreds of colored lights, and a large banner that said "Seasons Greetings." Similarly, in Capitol Square Review Advisory Board v. Pinette, 515 U.S. 753 (1995), the Court found that allowing the Ku Klux Klan to erect a cross in a park would not have violated the Establishment Clause, when the park was open to speech by many groups on equal terms. See also Doe v. Small, 964 F.2d 611 (7th Cir. 1992) (city could not exclude private association from displaying paintings in public park merely because of the religious content of the paintings).
Thus, the Establishment Clause does not require that private religious speech be excluded entirely from government forums. Chandler v. Siegelman, 230 F.3d 1313 (11th Cir. 2000) (public prayer by students would not violate Establishment Clause if not sponsored by school); Concerned Women for America v. Lafayette County, 883 F.2d 32 (5th Cir. 1989) (public library could not exclude religious group from use of its auditorium, when it had made facility available to wide variety of other groups).
In this instance, the coupons for Shea's Maze were included in materials distributed by the Carroll County Public Library, a government entity. However, those coupons — like other incentive materials provided by private businesses — were clearly not a government publication, but material typically prepared by private businesses for distribution by mail, newspaper, and other means. Moreover, the coupons were included not as the speech of the government, but as a "prize" for those who signed up for the reading program. The basis for their selection was presumably not endorsement of any particular product or message associated with a product, but rather the need to include a variety of items of interest to children. In our opinion, the inclusion of a coupon for a business that employs religious references in its trademark would not constitute government endorsement of religion.[5]
B. Freedom of Speech
You have asked whether the deletion of the biblical reference from the coupon violated free speech rights. We understand that there is some disagreement about the circumstances of the deletion — i.e., whether Shea's Maze consented to the alteration of the coupon, or whether the library staff reasonably believed that the business had agreed to allow distribution of the coupon without the biblical reference. An Attorney General's opinion is not an appropriate forum to resolve such factual questions. However, there appears to be no dispute that the library elected not to distribute material with a biblical reference. Thus, without attempting to resolve the circumstances of the deletion of the biblical reference, we consider whether it would have violated the free speech rights of the business if the library had simply declined to include its coupon in the reading program packet, on the basis that the coupon contained religious subject matter.
The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." Maryland Declaration of Rights, Article 40, provides that "every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects." The rights granted by the Maryland provision are substantially the same as those granted by the free speech clause of the federal constitution. Jakanna Woodworks, Inc. v. Montgomery County,344 Md. 584, 595, 689 A.2d 65 (1997).
Whether a government agency has unconstitutionally excluded a private speaker from a government forum depends in part on the nature of the forum. Good News Club v. Milford Central School, 121 S.Ct. 2093 (2001). Limitations on speech in a traditional public forum must be narrowly tailored to accomplish a compelling governmental interest. Capitol Square Review Advisory Board v. Pinette, 515 U.S. 753, 761 (1995).
However, an agency may restrict access to a nonpublic forum so long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view. Cornelius v. NAACP Legal Defense Education Fund, 473 U.S. 778, 803
(1985). "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." Id. at 806; see also Good News Club, 121 S.Ct. at 2099-100.
Cornelius involved a united charity campaign operated by the federal government among its employees. Advocacy groups that sought to benefit from the charity drive challenged rules that excluded any group that attempted to influence the outcome of political elections or the determination of public policy. The Court found that the charity drive was a nonpublic forum and analyzed the reasonableness of the restriction in light of the purpose of that forum. It concluded that the rules were reasonable, stating that the government could reasonably conclude that dollars spent on food for the poor are more likely to be effective than dollars spent on litigation, that including controversial groups could reduce participation to the detriment of the program, and that excluding such advocacy groups could avoid the appearance of political favoritism.473 U.S. at 809-11. The Court noted that "[e]ven if some incompatibility with general expressive activity were required . . . it would be administratively unmanageable if access [to the nonpublic forum] could not be curtailed in a reasonable manner." Id. at 809. The Court declined to decide whether the exclusion of plaintiffs was motivated by a desire to suppress their point of view and left the issue of viewpoint discrimination for the lower court on remand. Id. at 812-13.
In subsequent cases the Supreme Court has acknowledged that the distinction between permissible subject matter restrictions and impermissible viewpoint discrimination "is not a precise one." Rosenberger v. Rector and Visitors of the University of Virginia,515 U.S. 819, 8341 (1995). In Rosenberger, a student publication with a religious editorial viewpoint challenged a state university's refusal to provide it with the same financial support afforded other student publications. The Court concluded that the university's policy did not exclude religion as a subject matter, but rather disfavored religiously-inspired editorial viewpoints on otherwise permitted topics (e.g., racism, crisis pregnancies, eating disorders, music). Id at 826, 831. Thus, the policy discriminated against religiously-motivated viewpoints.
On the other hand, a neutral government policy restricting a nonpublic forum to commercial speech but excluding political and religious speech has been upheld, so long as the policy is not used simply to exclude a disfavored perspective on otherwise permitted topics. For example, in DiLoreto v. Downey Unified School District, 196 F.3d 958 (9th Cir. 1999), cert. denied, 529 U.S. 1067 (2000), a school district policy permitted only commercial advertising at a high school baseball field. The Ninth Circuit held that the policy did not violate the free speech rights of a prospective advertiser who was denied the opportunity to display the Ten Commandments and a religious message. Similarly, in Children of the Rosary v. City of Phoenix, 154 F.3d 972 (9th Cir. 1998) (White, J., ret.), cert. denied, 526 U.S. 1131 (1999), the court held that a ban against noncommercial advertising on municipal buses, which effectively barred religious and political advertising, did not constitute viewpoint discrimination. Cf. Summum v. City of Ogdeu, 152 F. Supp.2d 1286, 1293-94
(D. Ut. 2001) (free speech guarantee did not require city to accept and display gift of stone tablet summarizing tenets of Summum religion with other monuments in town park); Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 155 F. Supp.2d 142 (D.N.J. 2001) (upholding town's decision to refuse permission to religious organization to place ceremonial religious demarcation on telephone poles in town's right of way).
A "goodie bag" distributed by a public library as part of its reading program is not open to all speakers, or even to all speakers on certain topics. Rather, it includes materials developed by the library for the program and prizes selected by the library staff to induce children and their parents to participate in the program. It is most appropriately characterized as a nonpublic forum. A decision not to include certain types of subject matter in the packet does not violate free speech guarantees, unless that decision is unreasonable in light of the purpose of the packet or is based on the viewpoint of the speaker.
In our opinion, it would not be unreasonable for a public library to adopt a policy excluding certain subjects from the reading program packet. For example, the library might reasonably conclude that materials promoting violence, having sexually explicit content, or extolling alcoholic beverages are not appropriately included in a packet distributed to young children. For somewhat different reasons, the library might also exclude partisan political material. Cf. Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 272 (1988) (public school could refuse to sponsor student speech that would "associate the school with any position other than neutrality on matters of political controversy").
The library could also conclude that inclusion of sectarian religious references in the packet, while acceptable to many in the community, might discourage some children from participation in the reading program.[6] Moreover, the library could reasonably be concerned that the use of incentive items alluding to a particular religion might raise a question as to the library's neutrality on religious issues, even though inclusion of that material would not have violated the Establishment Clause. See Children of the Rosary, 154 F.3d at 979 (apart from concern about Establishment Clause, city had "especially strong interest" in "maintaining neutrality on political and religious issues").
Finally, unless the library chose to include materials promoting other religious groups or disparaging religion, we do not believe that exclusion of the coupons would have constituted viewpoint discrimination. Unlike Rosenberger, the forum in this case — the reading program packet — was not created to support the expression of various private viewpoints, but to provide tangible incentives to stimulate interest in the reading program. A neutral policy limiting the subject matter of the incentive items would not discriminate against religiously-inspired viewpoints on otherwise permissible topics.
In sum, it is our opinion that a library policy not to include coupons with sectarian religious references could be compatible with the free speech guarantees of the federal and State constitutions.
 III Conclusion
In our opinion, distribution of a coupon with a scriptural reference would not have violated the Establishment Clause. At the same time, excluding the coupon would not have violated constitutional guarantees of free speech.
 J. Joseph Curran, Jr. Attorney General
 Kathryn M. Rowe Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] The fish symbol is recognized as a Christian symbol, Webb v. City of Republic, 55 F. Supp.2d 994, 995 (W.D.Mo. 1999), as, of course, is the cross.
[2] The verse appears in the Letter of St. Paul to the Ephesians: "And take the helmet of salvation and the sword of the Spirit, which is the word of God." Ephesians, 6:17, Oxford Annotated Bible, Revised Standard Edition (1965).
[3] Critics accuse library director of religious discrimination, Carroll County Times (July 1, 2001); Reading freebie finds flashpoint, Baltimore Sun (June 30, 2001).
[4] There has been some confusion about whether, in focusing on the question of government endorsement, the Supreme Court was establishing an entirely new test, or simply explicating the second prong of the Lemon test — i.e., whether a government action has a primary effect of advancing or inhibiting religion. Compare Altman v. Bedford Cent. School District, 245 F.3d 49, 75 (2d Cir. 2001) and Webb v. City of Republic,55 F. Supp.2d 994, 997 (W.D.Mo. 1999) with A.C.L.U. of Ohio v. Capitol Square Review, 243 F.3d 289, 306 (6th Cir. 2001) (en banc) and Gaylor v. United States, 74 F.3d 214, 217 (10th Cir.), cert. denied, 116 S.Ct. 1830
(1996).
[5] We do not mean to imply that we would reach the same conclusion if the content of the coupon were markedly different (e.g., a church's advertising of its vacation bible school).
[6] While religious speech cannot be excluded from a public forum on the grounds that some may find it offensive, Stewart v. District of Columbia Armory Board, 789 F. Supp. 402 (D.D.C. 1992), Cornelius makes clear that speech may be excluded from a nonpublic forum on that basis if it may adversely affect participation in a program.
 *Page 253